# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**CHARLES E. CHRISTOPHER**                                             **PLAINTIFF**

**V.**                              **No. 4:23-CV-00241 LPR-PSH**

**MARTIN J. O'MALLEY, Commissioner of**
**SOCIAL SECURITY ADMINISTRATION**                                     **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. Introduction:

On November 2, 2020, Charles E. Christopher filed a Title II application for disability and disability insurance benefits, as well as an application for Title XVI supplemental security income. (Tr. at 15). In the applications, Mr. Christopher alleged disability beginning on May 29, 2020. *Id*. The applications were denied initially and upon reconsideration. On May 2, 2022, an administrative law judge

(ALJ) issued an unfavorable decision, finding that Mr. Christopher had not been under a disability from May 29, 2020, through the date of the decision. (Tr. at 15-27). On January 17, 2023, the Appeals Council denied Mr. Christopher's request for review of the hearing decision. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Christopher has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II. The Commissioner's Decision:

Mr. Christopher meets the insured status requirements of the Social Security Act through September 20, 2025. (Tr. at 17). The ALJ found that Mr. Christopher had not engaged in substantial gainful activity since the alleged onset date of May 29, 2020.[1] *Id*. At Step Two, the ALJ found that Mr. Christopher had the following severe impairments: anxiety, post-traumatic stress disorder (PTSD), and obesity. (Tr. at 18).

After finding that Mr. Christopher's impairments did not meet or equal a

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

Listed Impairment (Tr. at 18-20),[2] the ALJ determined that Mr. Christopher had the residual functional capacity (RFC) to perform work at the light exertional level, with additional limitations: (1) he could no more than occasionally climb, balance, crawl, kneel, stoop, and crouch; (2) he is limited to simple, routine, and repetitive tasks; (3) supervision must be simple, direct, and concrete; and (3) he can no more than occasionally interact with co-workers and the public. (Tr. at 20).

At Step Four, the ALJ determined that Mr. Christopher is unable to perform any past relevant work. (Tr. at 26). The ALJ next found that, based upon the testimony of a Vocational Expert (VE) and considering Mr. Christopher's age, education, work experience, and RFC, Mr. Christopher was able to perform work in the national economy. (Tr. at 26-27). Therefore, the ALJ found that Mr. Christopher was not disabled from May 29, 2020, through May 2, 2022. *Id*.

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see*

---

[2] 20 C.F.R. Part 404, Subpt. P, App'x 1, Adult Listing of Impairments (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416. 920(d), 416.925, and 416.926).

*also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    B.   Mr. Christopher's Arguments on Appeal

Mr. Christopher contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Specifically, he argues that: (1) the ALJ failed

to fully develop the record; (2) the ALJ erred in his assessment of Mr. Christopher's subjective complaints; and (3) the RFC did not incorporate all of Mr. Christopher's limitations. Mr. Christopher also asserts, as part of his record development argument, that the ALJ did not properly evaluate a treating provider opinion. The Court agrees that the ALJ did not follow regulatory requirements for the evaluation of the opinion of LPC Aaron Croy.[3]

Mr. Croy saw Mr. Christopher several times during the relevant time period in a mental health therapy role. Mr. Christopher regularly treated at Counseling Associates, Mr. Croy's clinic, from 2019 through 2021. (Tr. at 392-559).

Mr. Christopher suffered from panic attacks, anxiety, and PTSD, among other things. At various appointments at Counseling Associates, Mr. Christopher said that his panic attacks had become disabling. (Tr. at 21-23, 396-415, 448-451). He had trouble focusing and remembering things. *Id*. He had nightmares that caused sleeping problems. *Id*. While Mr. Christopher said he did not have problems interacting with others, he avoided social contacts outside of the home. (Tr. at 588). In 2020, Mr. Christopher told his therapist that he had to leave his job due to unstable

---

[3] While Mr. Christopher also had physical impairments, this Recommendation focuses on his mental impairments. See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

mood and increased anxiety. (Tr. at 408, 455). Three months later, Mr. Christopher reported increased panic symptoms and anxiety, and he presented as irritable. (Tr. at 392-399). In August 2020, Mr. Christopher's PCP noted that he was not doing well, in spite of the fact that his psychiatrist was attempting to adjust his psychiatric medications. (Tr. at 351).

Two Disability Determination Services (DDS) psychiatric experts reviewed the records in January 2021 and March 2021 and found that stress and anxiety contributed to memory and concentration problems, and that Mr. Christopher was frequently agitated, in spite of medication.[4] (Tr. at 90-91, 99). The experts assessed moderate limitations in: (1) maintaining attention and concentration for extended periods; (2) performing activities within a schedule and maintaining regular attendance; (3) being punctual; (4) being able to complete a normal workday without interruptions from psychologically-based symptoms; (5) being able to perform at a consistent pace without an unreasonable number and length of rest periods; (6) being able to accept instructions and respond appropriately to criticism from supervisors; (7) being able to respond appropriate to changes in the work setting; and (8) being able to get along with coworkers or peers without distracting them or exhibiting

---

[4] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

behavioral extremes. (Tr. at 87-102). The ALJ found these opinions persuasive.[5] (Tr. at 24-25).

Aaron Croy LPC, of Counseling Associates, issued an opinion on April 5, 2021, after seeing Mr. Christopher in person multiple times. (Tr. at 567-579). He stated that the assessment was for the period beginning May 29, 2020. In the opinion, Mr. Croy found that Mr. Christopher would have "no useful ability" to function in the following areas: (1) maintaining attention and concentration for extended periods; (2) performing activities within a schedule; (3) maintaining regular attendance or being punctual within customary tolerances; (4) completing a normal workday and workweek without interruptions from psychologically-based symptoms; (5) performing at a consistent pace without an unreasonable number and length of rest periods; (6) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; (7) behaving in an emotionally stable

---

[5] ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*. Supportability and consistency are the two most important factors and should be discussed. *Lucus v. Saul*, 960 F.3d 1066 (8th Cir. 2020),

manner; (8) working without deterioration or decompensation causing him to withdraw from the situation; and (9) working without deterioration or decompensation causing exacerbation of symptoms or adaptive behaviors. (Tr. at 567). In many ways, this opinion mirrored those of the DDS experts.

However, the ALJ discounted Mr. Croy's opinion, without discussing both of the required prongs (supportability and consistency). The ALJ simply stated: (1) "Mr. Croy's assessments are not supported by his own treatment notes"; (2) "Mr. Croy's assessments are made through a checkbox form"; and (3) "Mr. Croy has not included any statements to support his conclusions." (Tr. at 25). So, it is evident that the ALJ *did* discuss the supportability of Mr. Croy's opinions, though not in great detail, and without giving examples (the ALJ did not cite to the record). *Id*. However, the ALJ did not address the consistency of the opinion with other medical evidence, especially with the DDS expert opinions.[6] The Court wonders how the ALJ found the DDS opinions persuasive, and then Mr. Croy's similar opinion unpersuasive, without discussing the opinions' similarities or distinguishing their differences. ALJs must show their work, to inform meaningful Court review.[7] The Court cannot

---

[6] Both supportability and consistency should be discussed when an ALJ evaluates the persuasiveness of a medical opinion. *Bonneau v. Saul*, No. 3:20-CV-00095-PSH, 2021 U.S. Dist. LEXIS 44605, 2021 WL 920981 at *5, (E.D. Ark. Mar. 10, 2021).

[7] *Smajic v. Berryhill*, No. 4:17-CV-02474-SNLJ, 2019 U.S. Dist. LEXIS 6240, 2019 WL 183980

assume that the ALJ considered the similarities in the opinions when he did not say so. For this reason, reversal is warranted.[8]

## VI. Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred in his analysis of medical opinions.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further consideration of Mr. Christopher's mental impairments, including obtaining additional medical opinions, if necessary.

IT IS SO ORDERED this 22nd day of January, 2024.

_____
UNITED STATES MAGISTRATE JUDGE

---

at *11-12 (E.D. Mo. Jan. 14, 2019) (an ALJ must show his work); *Guess v. Kijakazi*, No. 4:20-CV-00887-JTR, 2021 U.S. Dist. LEXIS 241708, 2021 WL 5983193 at *9, n.6 (E.D. Ark. Dec. 17, 2021).

[8] The ALJ likewise did not compare Mr. Croy's opinion to that of a consultative examiner, who found that Mr. Christopher was irritable and easily distracted, and would need to be limited to unskilled work. (Tr. at 582-602).